

Kim J. Landsman
Ana-Claudia Roderick
GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP
437 Madison Avenue
New York, NY 10022
Tel.: (212) 907-7368
Fax: (212) 754-0777
Email: klandsman@golenbock.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

RELIEF GOLD GROUP, INC.,
Formerly 1837249 Ontario, Inc.,

               Plaintiff,

               v.

PERSHING GOLD CORPORATION,
f/k/a SAGEBRUSH GOLD LTD,
GOLD ACQUISITION CORP.,
BARRY C. HONIG, and DAVID S. RECTOR,

               Defendants.

-------------------------------------------------------------x

12 Civ. 0952 (VM)

ECF Case

**AMENDED COMPLAINT**

Jury Trial Demanded

       Plaintiff Relief Gold Group, Inc. ("Relief Gold" or "Plaintiff"), by its undersigned

attorneys, for its Amended Complaint against Defendants Sagebrush Gold Ltd, n/k/a

Pershing Gold Corporation ("Sagebrush" or "Pershing Gold"), Gold Acquisition Corp.

("Gold Acquisition"), Barry Honig ("Honig") and David Rector ("Rector") (collectively

"Defendants"), alleges as follows:

<u>**PARTIES AND JURISDICTION**</u>

    1.     Plaintiff Relief Gold Group, Inc. (formerly known as 1837249 Ontario,

Inc.) ("Relief Gold") is a corporation formed pursuant to the laws of Ontario, Canada, and

maintains its principal place of business at 123 Front Street, Suite 905, Toronto, Ontario, Canada.

2.      Defendant Pershing Gold (f/k/a Sagebrush Gold Ltd.) is a Nevada corporation that, as of the commencement of this action, maintained its principal place of business at 1640 Terrace Way, Walnut Creek, California.  As of the filing of this Amended Complaint, Pershing Gold maintains its principal place of business at 1658 Cole Boulevard, Building 6, Suite 210, Lakewood, Colorado.  It is therefore a citizen of the States of Nevada and California and/or Colorado.

3.      Defendant Gold Acquisition is a corporation formed on August 17, 2011, pursuant to the laws of the State of Nevada.  According to Pershing Gold's most recent Annual Report, Gold Acquisition is a wholly owned subsidiary of Pershing Gold formed for the purpose (the "Acquisition Sub") of acquiring certain contract rights and opportunities from Platinum Long Term Growth Fund to the Relief Canyon Mine property, as more fully described below.  Gold Acquisition is a citizen of the State of Nevada.

4.      Defendant Barry Honig is the Co-Chairman of the Board of Directors of Pershing Gold, f/k/a Sagebrush Gold Ltd, conducts business in this district, and resides at 11 West 19th Street, 10th Floor, New York, New York 10011.  Honig is a citizen of the State of New York.

5.      At all times relevant hereto,  Honig represented himself to be an officer or authorized agent of Sagebrush (now Pershing Gold) and, since September 29, 2010, has served as its Co-Chairman.

6.      Defendant David S. Rector is an individual who is and has at all relevant times been  the President of Pershing Gold, f/k/a Sagebrush Gold Ltd;, a Director of

Pershing Gold; the President, Secretary, and Treasurer of Defendant Gold Acquisition; and sole Director of Defendant Gold Acquisition.  Rector conducts business in this district, and resides at 1640 Terrace Way, Walnut Creek, California.  Rector is a citizen of the State of California.

7.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because it is a civil action in which the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different States.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## COMMON FACTUAL ALLEGATIONS

**A.     Platinum's Rights Under the Asset Purchase Agreement**

9.     As of November 29, 2010, non-party Firstgold Corp. was allegedly indebted to Platinum Long Term Growth LLC ("Platinum") and Lakewood Group, LLC ("Lakewood") in the amount of $19,357,962.17.

10.     Platinum claimed to be the collateral agent with respect to the alleged indebtedness of non-party Firstgold Corp to Platinum and Lakewood, and further claimed to be authorized to exercise certain rights of Platinum and Lakewood with respect to the alleged indebtedness.

11.     In an effort to realize upon the collateral and satisfy the alleged indebtedness due to Platinum and Lakewood, Platinum entered into an Asset Purchase Agreement (the "Asset Purchase Agreement") on November 29, 2010, with non-party Firstgold Corp., as Debtor in Possession, for the purchase of certain assets of non-party

Firstgold Corp. (the "Relief Canyon Mine Assets").  The Asset Purchase Agreement was subject to approval of the United States Bankruptcy Court for the District of Nevada, and subject to higher and better offers.

12.   On December 17, 2010, the United States Bankruptcy Court for the District of Nevada entered its Order (the "Sale Order") Authorizing and Approving (1) Sale of Certain Real Property and Certain Personal Property Pursuant to 11 U.S.C. § 363 Free and Clear of Liens, Claims, and Interest; and (2) Assumption and Assignment of Executory Contracts and Unexpired Leases Under 11 U.S. C. § 365; and (3) Related Relief.  (Doc 328).  The Sale Order approved the Asset Purchase Agreement and the successful bid of Canarc (as to a portion of the assets), Rodeo (as to a portion of the assets), and the back-up bid of Platinum with respect to the Relief Canyon Mine Assets.

13.   Canarc could not consummate the purchase, and Platinum stepped forward as the backup bidder.

14.   Relief Gold understood that Platinum did not desire to acquire and develop the Relief Canyon Mine Assets that were subject to the Asset Purchase Agreement, as approved by the Sale Order, and was simply looking to liquidate its position.

**B.**     **Plaintiff's Relief Canyon Business Plan**

15.   Following entry of the Sale Order and prior to June 23, 2011, Plaintiff Relief Gold, developed and began to implement a detailed business plan (the "Relief Canyon Business Plan") that presented a comprehensive review of gold mining opportunities located in Pershing County Nevada.  It outlined a trend starting with Midway Gold in the north and going south past the Couer Rochester Silver Gold Mine, extending south through the Victoria Gold land position and including the Firstgold Mine and finally

a further land south of Firstgold also held by Victoria Gold. The Relief Canyon Business Plan envisioned connecting several mining properties and saw this as an Area Scale mining development. The Relief Canyon Business Plan included, but was not limited to, a plan to acquire the rights of Platinum under the Asset Purchase Agreement as approved by the Sale Order, and combine them with the mining claims, rights, and private lands owned by Victoria Gold (including those subject to the interests of Newmont) (collectively, the "Victoria Gold Assets") adjacent to and surrounding the Relief Canyon Mine Assets.

16.     In developing the Relief Canyon Business Plan, Relief Gold identified the synergies that would be created by consolidation of the rights of Platinum under the Asset Purchase Agreement as approved by the Sale Order, including the right to acquire the Relief Canyon Mine Assets, and the Victoria Gold Assets into a single ownership and operating entity.

17.     As part of the Relief Canyon Business Plan, Relief Gold produced a confidential financial analysis of the acquisition and combination, including a plan for post-acquisition consolidation and operation of the combined operating entity that would own and operate the combined Relief Canyon Mine Assets and the Victoria Gold Assets, rights, and business opportunities; an analysis of the needs for acquisition and operational financing; and an exit plan for invested funds, including projected distributions to investors and preparation of a public stock offering.

C. **The Victoria Gold Assets**

18.     In late December 2010, following entry of the Sale Order, Relief Gold learned that Victoria Gold was interested in selling some of its Nevada assets, which Relief

Gold determined to include the Victoria Gold Assets not previously made available for sale.

19.     In furtherance of the Relief Canyon Business Plan, Relief Gold executed a binding offer letter with Victoria Gold on April 13, 2011, to acquire the Victoria Gold Assets; that binding offer letter was amended on August 8, 2011.

**D.     Plaintiff's Business Relationship With Defendants**

20.     In furtherance of the Relief Canyon Business Plan, Relief Gold sought financial assistance and/or an equity investment in connection with the implementation of its Relief Canyon Business Plan.

21.     Relief Gold was introduced to Sagebrush and Honig through Michael Baybak.  Baybak had a preexisting relationship with Sagebrush and Honig.  Relief Gold was advised by Baybak that Sagebrush, through Honig and Rector, had previously provided loans and other financial accommodations (or had caused others to do so) to persons or entities Baybak had introduced.

22.     Baybak arranged for a meeting in New York between Sagebrush (represented by Honig) and Relief Gold (represented by Stephan Katmarian).  The purpose of the meeting was Relief Gold's presentation of the financial requirements and confidential business plan for a potential investment target named Price Dodger.  Relief Gold sought to obtain financing from Sagebrush for the Price Dodger project.  Price Dodger is a Groupon competitor and has no relationship with Relief Gold outside of this meeting.

23.     On or about June 23, 2011, representatives of Relief Gold, Price Dodger, and Sagebrush met at the Peninsula Hotel in New York City.

24.     Also present at the meeting were, among others, Michael Shvartsman, the principal of Price Dodger; Ross DiMaggio, an associate of Honig; and another individual who was introduced as counsel for Sagebrush.

25.     As a condition of disclosure, Sagebrush agreed to receive and maintain in confidence the business plan and confidential information relating to Price Dodger.

26.     After the presentation was made to Sagebrush regarding Price Dodger, and Sagebrush agreed to provide financial accommodations to Price Dodger, Honig, on behalf of Sagebrush, represented to Relief Gold that Defendant Sagebrush was in the mining finance business and was interested in providing Relief Gold financial assistance and/or accommodations in other ventures or directly investing in those ventures.

27.     Defendants Sagebrush and Honig solicited from Relief Gold a detailed description of any then-existing business opportunities for which Defendant Sagebrush could possibly provide financial assistance and/or make an equity investment with Relief Gold in connection with such business opportunities.

28.      Defendants Sagebrush and Honig represented that the solicitation of information from Plaintiff was for the sole purpose of allowing Defendants Sagebrush, Honig, and Rector to determine if Defendant Sagebrush would provide loans or other financial accommodations to Relief Gold, invest in business opportunities involving Relief Gold, or enter into some other business relationship with Relief Gold in furtherance of the business opportunities of Relief Gold.

29.     Defendants Sagebrush, Honig, and Rector agreed, as a condition to the disclosure of the Relief Canyon Business Plan, to keep confidential the Relief Canyon Business Plan, to not disclose the Relief Canyon Business Plan to any third-party, and to

use Plaintiff's Relief Canyon Business Plan only for the purpose of considering and providing (or in the case of Honig and Rector, causing Sagebrush to provide) financial accommodation to or other investment in or business relationship with Plaintiff, and to not use or disclose (or permit Sagebrush to use or disclose) the Relief Canyon Business Plan for any other purpose whatsoever.

      30.    Honig manifested agreement by express statements.  Rector, who was the President and a member of Sagebrush's Board of Directors, manifested his agreement by silent acquiescence to Honig's statements.

      31.    By seeking and obtaining the agreement of Honig, on behalf of Sagebrush, and in light of Rector's status as President and Director of Sagebrush, Relief Gold took sufficient precautionary measures under the circumstances to ensure that the confidential information would remain confidential.

      32.    Under the circumstances, the execution of a written confidentiality agreement with Sagebrush was not expected as a condition of the requested disclosure.

      33.    Katmarian, on behalf of Relief Gold, in response to the solicitation by Defendants Sagebrush and Honig of a description of available business opportunities, and based upon the agreement and understanding of the parties that such confidential business and financial information would be kept confidential by Sagebrush, Honig and Rector, and used only for the purpose of considering and providing financial accommodations to Relief Gold, or a business transaction between Relief Gold and Sagebrush, and not used or disclosed by Sagebrush, Honig or Rector for any other purpose whatsoever, agreed to and did provide the requested confidential business and financial information to Sagebrush.

34.    Relief Gold disclosed to Defendants Sagebrush, Honig and Rector that it had developed and was in the process of implementing the Relief Canyon Business Plan.

35.    Relief Gold advised Sagebrush, Honig and Rector that Platinum's Asset Purchase Agreement had been approved by the Bankruptcy Court on December 17, 2010, and that Platinum's right to consummate the Asset Purchase Agreement and acquire the Relief Canyon Mine Assets could expire at the end of November 2011.  The confidential Relief Canyon Business Plan disclosed to Sagebrush, Honig, and Rector, and the involvement of Sagebrush in that Plan therefore not only could have been implemented but was intended to be implemented within a year.  Indeed, the parties anticipated that any participation by Sagebrush with Relief Gold to implement the confidential Relief Canyon Business Plan disclosed to Sagebrush would be accomplished by the end of November 2011 and, at any rate, within a year.

36.    Relief Gold disclosed to Defendants Sagebrush, Honig and Rector that in furtherance of the Relief Canyon Business Plan, Relief Gold had already entered into an agreement with Victoria Gold to acquire the Victoria Gold Assets and had advanced funds. Relief Gold also disclosed that it was moving forward with stage two of the Relief Canyon Business Plan by raising the capital to buy the Platinum's rights under the Asset Purchase Agreement as approved by the Sale Order.

37.    Relief Gold disclosed to Defendants Sagebrush, Honig, and Rector that Relief Gold was negotiating with Waterton Capital to provide a portion of the financing for the implementation of the Relief Canyon Business Plan.

38.    At the time of the June 23, 2011, Sagebrush, Honig and Rector were not aware of the opportunities and analyses disclosed in the Relief Canyon Business Plan.

39.     Relief Gold would not have disclosed its confidential Relief Canyon Business Plan to Defendants Sagebrush, Honig, and Rector without the express agreement and representations by Defendants Sagebrush and Honig, and the agreement and/or acquiescence of Defendant Rector, that Defendants Sagebrush, Honig and Rector would (a) maintain the Relief Canyon Business Plan in confidence, (b) not disclose the Relief Canyon Business Plan to any third-party, (c) use Plaintiff's Relief Canyon Business Plan only for the purpose of considering and providing financial accommodations to Plaintiff (or in the case of Honig and Rector, causing Sagebrush to provide), invest in Relief Gold or enter into some other business relationship with Relief Gold in furtherance of the Relief Canyon Business Plan (or in the case of Honig and Rector, causing Sagebrush to enter into such a relationship), and (d) not use or disclose the Relief Canyon Business Plan for any other purpose whatsoever.

40.     But for Relief Gold's reasonable reliance upon the duties owed to it by Defendants Sagebrush, Honig and Rector and their presumed integrity, Relief Gold would not have presented its confidential Relief Canyon Business Plan to them on June 23, 2011, in New York City.

41.     Following Relief Gold's presentation, Defendants Sagebrush, Honig, and Rector requested that Relief Gold send to Defendants Sagebrush, Honig, and Rector for their review additional and even more detailed information supporting the Relief Canyon Business Plan upon the same terms and conditions, including the limitations on use and disclosure, as the initial disclosure of the confidential Relief Canyon Business Plan.

42.     In reasonable reliance upon Defendants' continuing obligation to keep confidential and not use or disclose the Relief Canyon Business Plan and supporting

information other than for the agreed purpose, Relief Gold sent the additional, supporting information to Sagebrush, Honig, and Rector by a succession of email deliveries.

43.     The information conveyed by Relief Gold to Defendants Sagebrush, Honig, and Rector included, without limitation, Relief Gold's non-public analysis of the value of the assets, rights, and business opportunities held by Victoria Gold and Platinum, including Platinum's rights under the Asset Purchase Agreement as approved by the Sale Order, and the availability for purchase of the Victoria Gold Assets.  It also contained a broad description of an Area Scale mining opportunity on what has become known as the Pershing Trend.  This trend started with Midway Gold in the north and going south past the Couer Rochester Silver Gold Mine, extending south through the Victoria Gold land position to include the Firstgold Mine and, finally, a further land south of Firstgold also held by Victoria Gold.  The Business Plan made a compelling argument that this entire trend was connected and was seriously under-explored and that an enviable business opportunity existed to develop this opportunity.  The Relief Gold Business Plan identified a process for this development.

44.     Despite receiving the Relief Canyon Business Plan and related confidential information from Relief Gold under the agreement and conditions stated above, Sagebrush, Honig and Rector formed or caused the formation of Gold Acquisition for the purpose of acquiring the assets, rights and business opportunities held by Platinum under the Asset Purchase Agreement for their own benefit and to the exclusion of Relief Gold.

45.     Sagebrush filed with the Securities and Exchange Commission on August 30, 2011 a Form 8-K, signed by Rector as President of Sagebrush, representing that

Sagebrush, through Gold Acquisition, its newly-formed wholly owned subsidiary formed for that purpose, completed that acquisition in August 2011.

46.     Sagebrush (having in the interim changed its name to Pershing Gold) filed with the Securities and Exchange Commission on April 11, 2012, a Form8-K, representing that Sagebrush (now Pershing Gold) had satisfied all of the conditions to closing and had acquired the Victoria Gold Assets.

47.     Gold Acquisition purchase, through the efforts of Sagebrush, Honig, and Rector, of the assets, rights and business opportunities held by Platinum, and Sagebrush's acquisition of the Victoria Gold Assets undermined and destroyed the value of the Relief Canyon Business Plan, and reflects the completion of the wrongful misappropriation by Defendants of the entirety of the Relief Canyon Business Plan for the benefit of Defendants and to the exclusion of Relief Gold.

48.     The acquisition of Platinum's interest under the Asset Purchase Agreement as approved by the Sale Order, to the exclusion of Relief Gold, and the acquisition of the Victoria Gold Assets, was made by means and misuse of the knowledge gained by Defendants Sagebrush, Honig, and Rector from the Relief Canyon Business Plan and other confidential information provided by Relief Gold to Defendants Sagebrush, Honig and Rector.

### First Claim for Relief - Breach of Contract (against Sagebrush)

49.     Plaintiff Relief Gold hereby incorporates by reference the facts and allegations set forth in paragraphs 1 through 48 above, as if fully set forth herein.

50.     Relief Gold and Sagebrush entered into a binding contract pursuant to which Relief Gold agreed to provide in confidence to Sagebrush and Honig confidential

business and financial information, including but not limited to the Relief Canyon Business Plan, upon the agreement that the information would remain confidential and be used solely for the purposes described above for affording Defendant Sagebrush the opportunity to offer a loan and/or other financial accommodations to Plaintiff Relief Gold, invest in Relief Gold or enter into some other business relationship with Relief Gold in furtherance of the Relief Canyon Business Plan that could and was expected to occur by the end of November 2011 and, in any event, within a year.

51.     Sagebrush breached the agreement by using and/or disclosing the Relief Canyon Business Plan and the supporting confidential information to acquire, through Gold Acquisition, from Platinum the rights under the Asset Purchase Agreement as approved by the Sale Order and to acquire from Victoria Gold the Victoria Gold Assets that were the subject of an agreement between Relief Gold and Victoria Gold, and part of the Relief Canyon Business Plan.

52.     As a result of the breach by Defendant Sagebrush of its contractual obligations, Plaintiff Relief Gold has suffered damages in excess of $75,000.00, exclusive of interest, costs and attorneys' fees.

<u>**Second Claim for Relief – Intentional Interference With Contract**</u>
<u>**(against Honig, Rector and Gold Acquisition)**</u>

53.     Plaintiff Relief Gold hereby incorporates by reference the facts and allegations set forth in paragraphs 1 through 52 above, as if fully set forth herein.

54.     As described above, a binding contract existed between Plaintiff Relief Gold, on the one hand, and Defendant Sagebrush, on the other.

55.     Honig and Rector had actual knowledge of the contract between Plaintiff Relief Gold, on the one hand, and Defendant Sagebrush, on the other.

13

56.     Gold Acquisition, by reason of the commonality of officers, directors and persons in control of its operations with those of Sagebrush, including but not limited to Rector's service as a Director of Sagebrush and as the sole officer of Gold Acquisition, had actual knowledge or is charged with knowledge of the contract between Relief Gold, on the one hand, and Defendant Sagebrush, on the other.

57.     Despite knowledge of the contract, Honig, Rector, and Gold Acquisition intentionally caused Sagebrush to breach its contractual obligations to Relief Gold, by causing Defendant Sagebrush to use and disclose the Relief Canyon Business Plan and the supporting information to Gold Acquisition for the benefit of Gold Acquisition, Honig, and Rector, all in violation of Sagebrush's obligation to maintain the confidentiality of that business plan.

58.     Sagebrush has, as alleged above, breached its contractual obligations to Relief Gold.

59.     Honig's, Rector's and Gold Acquisition's conduct is without legal basis or justification.

60.     The breach by Sagebrush of its contractual duties to Relief Gold caused by Honig, Rector and Gold Acquisition, caused damages to Relief Gold in excess of $75,000.00, exclusive of interest, costs and attorneys' fees.

### Third Claim for Relief – Intentional Interference With Prospective Business Relationship/Economic Relations (against Sagebrush, Honig and Rector)

61.     Plaintiff Relief Gold hereby incorporates by reference the facts and allegations set forth in paragraphs 1 through 60 above, as if fully set forth herein.

62.     As described above, a prospective business relationship existed between Relief Gold, on the one hand, and Platinum, on the other, relating to Relief Gold's acquisition of Platinum's rights under the Asset Purchase Agreement as approved by the Sale Order.

63.     Sagebrush, Honig, and Rector, by reason of the disclosure by Relief Gold of the Relief Canyon Business Plan, had actual knowledge of that prospective business relationship.

64.     Knowing of the prospective business relationship, Sagebrush, Honig, and Rector made egregious misrepresentations to Platinum in order to induce Platinum to contract with Gold Acquisition and assign to Gold Acquisition on August 30, 2011, the rights of Platinum under the Asset Purchase Agreement as approved by the Sale Order.

65.     Sagebrush, Honig, and Rector intentionally and tortiously interfered with Relief Gold's prospective business relations through wrongful means that included significant misrepresentations directed at Platinum, a third-party.

66.     By reason of the intentional interference by Sagebrush, Honig, Rector, Platinum did not enter into the contract with Relief Gold, but instead entered into an agreement with Gold Acquisition to assign to Gold Acquisition the rights of Platinum under the Asset Purchase Agreement as approved by the Sale Order.

67.     The conduct of Sagebrush, Honig and Rector is without legal basis or justification.

68.     The intentional interference alleged above caused damages to Relief Gold in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

### Fourth  Claim for Relief – Intentional Interference With
### Prospective Business Relationship/Economic Relations
### (against Gold Acquisition)

69.     Plaintiff Relief Gold hereby incorporates by reference the facts and allegations set forth in paragraphs 1 through 68 above, as if fully set forth herein.

70.     As described above, a prospective business relationship existed between Plaintiff Relief Gold, on the one hand, and Platinum, on the other, relating to Plaintiff's acquisition of Platinum's rights under the Sale Order.

71.     Gold Acquisition, was formed as a wholly owned subsidiary of Sagebrush and was controlled by Sagebrush, Honig, and Rector for the purpose of acquiring the rights of Platinum under the Asset Purchase Agreement as approved by the Sale Order, had actual knowledge of the  prospective business relationship between Relief Gold and Platinum.

72.     Knowing of the prospective business relationship, Gold Acquisition made egregious misrepresentations to Platinum in order to induce Platinum to contract with Gold Acquisition and assign to Gold Acquisition on August 30, 2011 the rights of Platinum under the Asset Purchase Agreement as approved by under the Sale Order.

73.     Defendant Gold Acquisition intentionally and tortiously interfered with Relief Gold's prospective business relations through wrongful means that included significant misrepresentations directed at Platinum, a third-party.

74.     By reason of the intentional interference by Gold Acquisition, Platinum did not enter into the contract with Relief Gold, but instead entered into an agreement with Gold Acquisition to assign to Gold Acquisition the rights of Platinum under the Asset Purchase Agreement as approved by the Sale Order.

75.     The conduct of Gold Acquisition without legal basis or justification.

16

76.     As a proximate cause of the intentional interference, Plaintiff has suffered damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

**Fifth Claim for Relief - Misappropriation of Trade Secrets (against all Defendants)**

77.     Plaintiff Relief Gold hereby incorporates by reference the facts and allegations set forth in paragraphs 1 through 76 above, as if fully set forth herein.

78.     The Relief Canyon Business Plan constitutes a trade secret.

79.     The Relief Canyon Business Plan was provided to Defendant Sagebrush in confidence, and based upon their agreement that they would maintain the Relief Canyon Business Plan in confidence, not disclose the Relief Canyon Business Plan to any third-party, use Plaintiff's Relief Canyon Business Plan only for the purpose of considering and providing financial accommodations to Plaintiff, and/or make an equity investment with Relief Gold in connection with such business opportunities and to not use or disclose the Relief Canyon Business Plan for any other purpose whatsoever.

80.     By seeking and obtaining the agreement of Honig, on behalf of Sagebrush, that such confidential business and financial information would be kept confidential by Sagebrush and not disclosed to any third-party, used only for the purpose of considering and providing financial accommodations to Relief Gold, or a business transaction between Relief Gold and Sagebrush, and not used or disclosed by Sagebrush for any other purpose whatsoever, Relief Gold took under the circumstances sufficient precautionary measures to ensure that the confidential information would remain confidential.

81.     Under the circumstances, the execution of a specific written confidentiality agreement with Sagebrush was not expected as a condition of the requested disclosure

82.     Defendants Sagebrush, Honig, Rector and Gold Acquisition unlawfully misappropriated the Relief Canyon Business Plan for their own purposes.

83.     As a proximate cause of Defendants' unlawful conduct, Plaintiff has suffered damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

**Sixth Claim for Relief - Unjust Enrichment (against Sagebrush)**

84.     Plaintiff Relief Gold hereby incorporates by reference the facts and allegations set forth in paragraphs 1 through 83 above, as if fully set forth herein.

85.     If the Court determines that there is not an actual agreement between Plaintiff Relief Gold and Sagebrush, Relief Gold is entitled to be compensated in equity from Sagebrush.

86.     By reason of the disclosure by Relief Gold to Sagebrush of the Relief Canyon Business Plan, in reliance upon the promise by Sagebrush that such confidential business and financial information would be kept confidential by Sagebrush and not disclosed to any third-party, used only for the purpose of considering and providing financial accommodations to Relief Gold, or a business transaction between Relief Gold and Sagebrush, and not used or disclosed by Sagebrush for any other purpose whatsoever, Relief Gold conferred a benefit upon Sagebrush.

87.     It would be inequitable for Sagebrush to retain the benefit conferred upon it by Relief Gold without compensation to Relief Gold.

88.     Sagebrush would be unjustly enriched, and Relief Gold unjustly harmed, if Sagebrush was permitted to retain the benefit of its receipt and use of the Relief Canyon Business Plan (including but not limited to the benefit realized by its ownership of Gold Acquisition) without compensation to Relief Gold.

**Seventh Claim for Relief - Unjust Enrichment (against Honig and Rector)**

89.     Plaintiff Relief Gold hereby incorporates by reference the facts and allegations set forth in paragraphs 1 through 88 above, as if fully set forth herein.

90.     If the Court determines that there is not an actual agreement between Plaintiff Relief Gold and Sagebrush, then Relief Gold is entitled to be compensated in equity from Honig and Rector.

91.     At the behest of Honig and Rector and based upon the express request made at the in-person meeting on June 23, 2011, Relief Gold disclosed its Relief Canyon Business Plan to Sagebrush, Honig and Rector on that day and, in continuing reliance upon the undertaking of confidentiality, subsequently provided additional supporting information relating to the Relief Canyon Business Plan.

92.     The in-person meeting on June 23, 2011 between Relief Gold (through Steve Katamarian), on the one hand, and Honig and Rector, on the other, on the other, was sufficient direct contact and created a sufficient connection or relationship that Relief Gold reasonably relied upon the representations and inducement of Honig and Rector.

93.     By reason of the disclosure by Relief Gold to Honig and Rector of the Relief Canyon Business Plan, made in response to their solicitation of the Plan at the express request of Honig in the presence of Rector and in reliance upon the promise that such confidential business and financial information would be kept confidential by Sagebrush and not disclosed to any third-party, used only for the purpose of considering and providing financial accommodations to Relief Gold, or a business transaction between Relief Gold and Sagebrush, and not used or disclosed by Sagebrush for any other purpose whatsoever, Relief Gold conferred a benefit upon Honig and Rector.

94.     Upon information and belief, each of Honig and Rector personally benefitted from the improper use and disclosure of the Relief Canyon Business Plan, by reason of among other items, the increase in value of the shares of stock each hold in Sagebrush, compensation and/or other remuneration received by Rector and/or Honig, as the case may be (including the "consulting agreement" between Pershing Gold and Honig, arising from or relating to the acquisition by Sagebrush of Platinum's rights under the Asset Purchase Agreement as approved by the Sale Order and the rights held by Victoria Gold).

95.     The benefits received by Honig and Rector are separate and distinct from the benefits unjustly received by Sagebrush.

96.     It would be inequitable for Honig and/or Rector to retain the benefit conferred upon them by Relief Gold without compensation to Relief Gold.

97.     Honig and Rector would be unjustly enriched, and Relief Gold unjustly harmed, if Honig and Rector were permitted to retain the benefit of their receipt of the Relief Canyon Business Plan without compensation to Relief Gold.

**<u>Eighth Claim for Relief – Promissory Estoppel (against Sagebrush)</u>**

98.     Plaintiff Relief Gold hereby incorporates by reference the facts and allegations set forth in paragraphs 1 through 97 above, as if fully set forth herein.

99.     Sagebrush clearly and unambiguously agreed to keep the Relief Gold Business Plan and supporting information confidential, not disclose the Relief Canyon Business Plan and the supporting information to any third-party, use Plaintiff's Relief Canyon Business Plan and the supporting information only for the purpose of Sagebrush considering and providing financial accommodations to Plaintiff, and/or make an equity

investment with Relief Gold in connection with such business opportunities and to not use or disclose the Relief Canyon Business Plan and the supporting information for any other purpose whatsoever.

100.    Relief Gold reasonably and foreseeably relied on this promise when it disclosed to Sagebrush, Honig, and Rector the Relief Gold Business Plan and supporting information.

101.    Relief Gold has suffered damages as a proximate cause of the breach by Sagebrush of the promise to maintain the Relief Canyon Business Plan and the supporting information in confidence, not disclose the Relief Canyon Business Plan and the supporting information to any third-party, use Plaintiff's Relief Canyon Business Plan and the supporting information only for the purpose of considering and providing financial accommodations to Plaintiff, and/or make an equity investment with Relief Gold in connection with such business opportunities, and to not use or disclose the Relief Canyon Business Plan for any other purpose whatsoever.

## RELIEF SOUGHT

Wherefore, Plaintiff Relief Gold prays that this Court enter judgment against defendants as follows:

A.    Granting judgment against Defendants Sagebrush, Honig, Rector, and Gold Acquisition in such amount as may be proven, but in no event less than $75,001.00, exclusive of interest, costs, and attorneys' fees;

B.    Enjoining Defendants Sagebrush, Honig Rector and Gold Acquisition from exercising any rights or privileges gained or acquired as a consequence of the unlawful and tortious breach of their contractual and equitable

obligations, including any management rights over Defendant Gold

Acquisition, or the assets acquired by Defendant Gold Acquisition as a

result of the breach by the other Defendants of their contractual and other

legal and equitable obligations to Plaintiff;

C.     Ordering Defendants Sagebrush, Honig, Rector and Gold Acquisition to

fully account for and disgorge the profits, benefits and other advantages

gained by reason of their unlawful and tortious conduct, and that a judgment

be entered in favor of Plaintiff and against the Defendants, jointly and

severally, in the amount and value of such profits, benefits and other

advantages; and

D.     Awarding in favor of Plaintiff Relief Gold and against Defendants

Sagebrush, Honig, Rector and Gold Acquisition such other relief as may be

just and equitable under the circumstances.

### JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated:  New York, New York
        May 10, 2012

                                        Respectfully submitted,

                                        Kim J. Landsman
                                        Ana-Claudia Roderick
                                        GOLENBOCK EISEMAN ASSOR
                                        BELL & PESKOE LLP
                                        437 Madison Avenue
                                        New York, NY 10022
                                        Tel.: (212) 907-7368
                                        Fax: (212) 754-0777
                                        Email: klandsman@golenbock.com

22

Michael A. Nedelman
NEDELMAN LEGAL GROUP PLLC
28580 Orchard Lake Road, Suite 140
Farmington Hills, Michigan 48334
Tel.: (248) 855-8888
mnedelman@nglegal.com

and

Patrick A. Moran, Esq.
65 Tonnancour Place
Grosse Pointe Farms, Michigan 48236
Tel.: (313) 999-0593

*Attorneys for Plaintiff*
*Relief Gold Group, Inc.*

## CERTIFICATE OF SERVICE

I, Kim J. Landsman, certify that on May 10, 2012, I caused the foregoing Amended Complaint to be served by electronic mail upon the following Counsel for Defendants Pershing Gold Corporation f/k/a/ Sagebrush Gold Ltd., Gold Acquisition Corp., Barry C. Honig, and David S. Rector, and that Counsel for Defendants agreed to accept such service by electronic mail:

> Christopher P. Milazzo, Esq.
> Sichenzia Ross Friedman Ference LLP
> 61 Broadway, 32nd Floor
> New York, New York 10006
> Email: cmilazzo@srff.com

KIM J. LANDSMAN